1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

STEVEN T. MARVIK,                )        3:11-cv-00754-LRH (WGC)
                                 )
        Plaintiff,               )        **REPORT AND RECOMMENDATION**
                                 )        **OF U.S. MAGISTRATE JUDGE**
            vs.                  )
                                 )
WASHOE COUNTY, et. al.,          )
                                 )
        Defendants.              )
_____ )

        This Report and Recommendation is made to the Honorable Larry R.  Hicks, United
States District Judge. Before the court is Plaintiff's pro se Complaint (Doc. # 1-3)[1], filed on
October 18, 2011; his application for leave to proceed in forma pauperis (Doc. # 1), also filed
on September 8, 2011; and his Motion for the Court to Make a Decision on Financial
Statement (Doc. # 8).

## I. APPLICATION FOR LEAVE TO PROCEED IN FORMA PAUPERIS

        A person may be granted permission to proceed in forma pauperis if the person
"submits an affidavit that includes a statement of all assets such [person] possesses [and] that
the person is unable to pay such fees or give security therefor. Such affidavit shall state the
nature of the action, defense or appeal and affiant's belief that the person is entitled to
redress." 28 U.S.C. § 1915(a)(1).  "'[T]he supporting affidavits [must] state the facts as to the
affiant's poverty with some particularity, definiteness, and certainty.'" *United States v.
McQuade*, 647 F.2d 938, 940 (9th Cir.  1981) (per curiam) (citing *Jefferson v.  United States*,

_____

[1] Refers to court's docket number.

1   277 F.2d 723, 725 (9th Cir. 1960)). The litigant need not "be absolutely destitute to enjoy the

2   benefits of the statute." *Adkins v. E.I. du Pont De Nemours & Co.*, 335 U.S. 331, 339 (1948).

3       In his application, Plaintiff states he is currently incarcerated at Lakes Crossing Center

4   and his current take-home pay is $0.00. (Doc. # 1 at 1.) In the past twelve months, he has

5   received income from the following sources: (1) $934.00 per month in Supplemental Security

6   Income (SSI) benefits; and (2) $7.00 for five (5) hours of work at Lakes Crossing Center. (*Id.*)

7   He has $300.00 in cash or in a checking or savings account. (*Id.* at 2.) Plaintiff's expenses

8   include: (1) $55.00 per month for storage; (2) $30.00 per month for phone; (3) $80.00 per

9   month for transportation; (4) $22.00 every six months for a post office box; (5) $500.00 per

10  month for housing; (6) $300.00 per month for food; and (7) $100 a month for clothing. (*Id.*)

11  He has debts in the amount of approximately $20,000.00. (*Id.*) While the court cannot

12  ascertain Plaintiff's precise ability to pay the filing fee based on the information contained

13  within his application, the court finds it is unlikely Plaintiff would be able to pay the $350

14  filing fee given that he appears to receive only approximately $934.00 per month, and

15  Plaintiff's expenses exceed his monthly income. Therefore, Plaintiff's application to proceed

16  in forma pauperis (Doc. # 1) should be granted. As a result, Plaintiff's Motion for the Court

17  to Make a Decision on Financial Statement (Doc. # 8), should be denied as moot.

18

19                            **II. SCREENING**

20  **A. Standard**

21      Applications to proceed in forma pauperis are governed by 28 U.S.C. § 1915, which

22  "authorizes the court to dismiss an IFP action that is frivolous or malicious." *Franklin v.*

23  *Murphy*, 745 F.2d 1221, 1226 (9th Cir. 1984) (citing 28 U.S.C. § 1915(a) (citing 28 U.S.C. §

24  1915(d)). This provision applies to all actions filed in forma pauperis, whether or not the

25  plaintiff is incarcerated. *See Lopez v. Smith*, 203 F.3d 1122, 1129 (9th Cir. 2000) (en banc);

26  *see also Calhoun v. Stahl*, 254 F.3d 845 (9th Cir. 2001) (per curiam).

27

28                                    2

28 U.S.C. § 1915 provides: "the court shall dismiss the case at any time if the court determines that . . . the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim upon which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B)(i)-(iii). Dismissal of a complaint for failure to state a claim upon which relief may be granted is provided for in Federal Rule of Civil Procedure 12(b)(6), and this court applies the same standard under Section 1915(e)(2) when reviewing the adequacy of a complaint or amended complaint. Review under Rule 12(b)(6) is essentially a ruling on a question of law. *See Chappel v. Lab. Corp. of America*, 232 F.3d 719, 723 (9th Cir. 2000).

A complaint must contain more than a "formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient to "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "The pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.* (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, at 235-36 (3d ed. 2004)). In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, *Hosp. Bldg. Co. v. Trustees of Rex Hosp.*, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to plaintiff, and resolve all doubts in the plaintiff's favor. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969). Allegations in pro se complaints are held to less stringent standards than formal pleadings drafted by lawyers, and must be liberally construed. *See Hughes v. Rowe*, 449 U.S. 5, 9 (1980); *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (*per curiam*); *see also Hamilton v. Brown*, 630 F.3d 889, 893 (9th Cir. 2011); *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

**B.  Plaintiff's Complaint**

Plaintiff names the following as defendants in this action: Washoe County (Count I); Washoe County Public Defender's Office (Counts I, X); Washoe County District Attorney's Office (Counts I, X); Washoe County Detention Center (Count I); and Judge Harold G.

Albright (Counts I, II, III, IV).  (Doc. # 1-3 at 2-3.)  Plaintiff brings this action pursuant to 42 U.S.C. § 1983.  (*Id.* at 1.)  While not specifically identified in the caption, Plaintiff does include allegations relating to the following additional defendants: Jim Leslie (of the Public Defender's Office) (Counts I-VII, IX-XI), Nicole Moschello (of the District Attorney's Office) (Counts I-IV, VI, IX-XI), Washoe County Sheriff's Department (Counts V, VIII), and Washoe County Sheriff's Department Officers Tingley (Count VIII) and Youngblood (Count VIII). The Clerk's Office should be directed to amend the caption to reflect these additional defendants.

Throughout his Complaint, Plaintiff makes vague reference to claims for abuse of police power, abuse of state power, fair and equal due process, cruel and unusual punishment, conspiracy, the right to competent legal counsel, and the right to a speedy trial. (Doc. # 1-3 at 4-14.)

Plaintiff requests that the Defendants be legally punished for their crimes. (Doc. # 1-3 at 17.) He also seeks $20 million in damages.  (*Id.*)

**C. Analysis**

"To sustain an action under Section 1983, a plaintiff must show (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of a federal constitutional or statutory right." *Wood v. Ostrader*, 879 F.2d 583, 587 (9th Cir.  1989). Section 1983 does not provide a cause of action for violations of state law. *See Galen v.  County of Los Angeles*, 477 F.3d 652, 662 (9th Cir. 2007).

**1. Counts I-IV, VI-VII, IX-XI**

In Count I, Plaintiff alleges that the District Attorney's Office, Public Defender's Office, and Judge Harold Albright allowed the Reno Police Department to submit a fraudulent supplemental summary into evidence. (Doc. # 1-3 at 4.) It appears that Plaintiff is asserting a deficiency with respect to evidence presented to Judge Albright regarding a criminal charge. (*Id.*)

4

In Count II, Plaintiff asserts that a preliminary hearing was supposed to occur on March 23, 2011, but his public defender, Jim Leslie, asked for a postponement for the delivery of evidence. (Doc. # 1-3 at 5.)  He appears to be alleging ineffective assistance of counsel on the part of Mr.  Leslie. (Doc. # 1-3 at 5.)

In Count III, Plaintiff again appears to allege some sort of mishandling of his criminal case by his public defender. (Doc. # 1-3 at 6.)

In Count IV, Plaintiff alleges that his public defender filed an "illegal" competency motion. (Doc. # 1-3 at 7.) He asserts that Judge Albright should not have heard this motion without talking to Plaintiff. (*Id.*)

In Count VI, Plaintiff alleges that he was transported to the district court, without being told that he had been transferred from justice court to district court.  (Doc. # 1-3 at 9.) He goes on to allege that his public defender failed to object to things at the hearing. (*Id.*)

In Count VII, Plaintiff includes various allegations regarding his public defender's asserted mishandling of his criminal case. (*Id.*)

In Count IX, Plaintiff alleges that Jim Leslie and Nicole Moschello allowed the court to postpone a court appearance for no legal reason. (Doc. # 1-3 at 12.)

In Count X, Plaintiff includes vague and confusing allegations regarding a hearing where he was told he would be going to Lakes Crossing Center for treatment. (Doc. # 1-3 at 13.) Plaintiff alleges that the Public Defender's Office and District Attorney's Office knew that reports generated by Lakes Crossing Center were fraudulent. (*Id.*) Plaintiff goes on to allege that his public defender was incompetent to defend him. (*Id.*)

In Count XI, Plaintiff includes more vague allegations that appear to assert an ineffective assistance of counsel claim against his public defender. (Doc. # 1-3 at 14.)

These allegations all focus on alleged mishandling of an underlying criminal claim in state court. For the most part, they relate to alleged ineffective assistance of counsel on the part of Plaintiff's public defender, Jim Leslie. These claims are not properly brought in a

5

§ 1983 action. Plaintiff's remedy, if any, is a direct appeal from any criminal conviction or a habeas corpus petition. Moreover, "[j]udges are absolutely immune from damages actions taken within the jurisdiction of their courts." *Schucker v. Rockwood*, 846 F.2d 1202, 1204 (9th Cir. 1988); *see also Brown v. Cal Dep't of Corr.*, 554 F.3d 747, 750 (9th Cir. 2009) (absolute immunity generally accorded to judges functioning in their official capacities). In addition, Ms. Moschello, as a prosecutor, is entitled to absolute immunity when acting pursuant to her official role as an advocate for the state performing functions "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976); *see also Van De Kamp v. Goldstein*, 555 U.S. 335 (2009).

To the extent Plaintiff is asserting criminal claims for abuse of state power and conspiracy, these claims are not properly brought in a civil action. Courts have long held that, unless an exception exists, "'criminal statutes cannot be enforced by civil actions.'" *Collins v. Palczewski*, 841 F.Supp. 333, 340 (D.Nev. 1993) (quoting *Bass Angler Sportsman Soc. v. United Steel Corp.*, 324 F.Supp. 412, 415 (S.D. Ala. 1981) (citation omitted); *United States v. Jourden*, 193 F. 986 (9th Cir. 1912)).

Accordingly, the court recommends that Counts I-IV, VI-VII, and IX-XI be dismissed with prejudice.

**2. Count V**

In Count V, Plaintiff alleges that he was walking in his unit and slipped on water and fractured his toe. (Doc. # 1-3 at 8.) He asserts this can be attributed to the negligence of the Washoe County Sheriff's Office in failing to fix the shower. (*Id.*) He also asserts that X-rays of his toe were not taken until approximately three (3) weeks later. (*Id.*) He claims that his public defender knew about the incident, and did nothing. (*Id.*)

Count V potentially contains two claims: (1) a state law negligence claim regarding a failure to fix the shower that resulted in his slip and fall; and (2) a claim that there was deliberate indifference to a serious medical need.

1    Preliminarily, to the extent Plaintiff seeks to include his public defender, Jim Leslie, as

2    a defendant in this claim, Mr. Leslie should be dismissed with prejudice. The court cannot

3    imagine a set of circumstances where it would be plausible that Plaintiff's public defender, Mr.

4    Leslie, would have any liability for a slip and fall that occurred in the jail and resulting medical

5    care.

6                                    **i. Negligence**

7    To state a claim for negligence under Nevada law, a plaintiff must establish: (1) the

8    defendant owed a duty of care to the plaintiff; (2) the defendant breached that duty; (3) the

9    breach was the legal cause of the plaintiff's injuries; and (4) plaintiff suffered damages.

10   *Scialabba v. Brandise Construction Co.*, 921 P.2d 928, 930, 112 Nev. 965, 968 (Nev. 1996)

11   (citation omitted).

12   While Plaintiff might state a colorable claim for negligence, Plaintiff attributes this

13   conduct to the "Washoe County Sheriffs" and "Washoe County Employees." (Doc. # 1-3 at 8.)

14   Because Plaintiff has not identified any particular Washoe County employee that is responsible

15   for the negligence, the court will construe the allegations only against the Washoe County

16   Sheriff's Department.

17   Under Nevada law, "in the absence of statutory authorization, a department of the

18   municipal government may not, in the department name, sue or be sued." *Wayment v.*

19   *Holmes*, 112 Nev. 232, 912 P.2d 816, 819 (Nev. 1996); *Schneider v. Elko County Sheriff's*

20   *Dep't*, 17 F.Supp.2d 1162, 1165 (D. Nev. 1998) (finding that an action against Elko County

21   Sheriff's Department was frivolous for lack of capacity to be sued). As described in *Schneider*:

22              Nevada defines a political subdivision as a "community action
             agency" as defined in the now repealed 42 U.S.C. § 2790. NRS
23           41.0305. 42 U.S.C. § 2790, in turn, defined a community action
             agency as one with the power to enter into contracts, to receive
24           and administer funds, and to delegate powers to other agencies.
             Economic Opportunity Amendments of 1967, Secs. 210(a)(1) &
25           212(a), 81 Stat. 691-94 (1967). A Nevada county falls within this
             definition, but not a sheriff's department.
26   *Schneider*, 17 F.Supp.2d at 1164. In reality, a judgment against these departments would be

27   considered a judgment against their corresponding municipalities; however, the court cannot

28                                          7

1   allow the case to proceed against a named entity which lacks the capacity to be sued under

2   Nevada law. *See id.*

3       Accordingly, this claim should be dismissed; however, Plaintiff should be given leave

4   to amend to sue the proper defendant.

5                           **ii. Medical care**

6       Plaintiff's status as an inmate determines the appropriate standard for evaluating

7   Plaintiff's constitutional claims. The Eighth Amendment applies to "convicted prisoners." *See*

8   *Whitley v. Albers*, 475 U.S. 312, 318-19 (1986); *Bell v . Wolfish*, 441 U.S. 520, 536 n. 16

9   (1979); *Jones v. Johnson*, 781 F.2d 769, 771 (9th Cir. 1986). The more protective Fourteenth

10  Amendment standard applies to conditions of confinement when detainees have not been

11  convicted. *See Bell*, 441 U.S. at 535-37; *see also Gary H. Hergstrom*, 831 F.2d 1430 (9th Cir.

12  1987). It appears from Plaintiff's allegations that he was a pretrial detainee when the alleged

13  conduct described above took place.

14      A pretrial detainee's right to be free from punishment is grounded in the Due Process

15  Clause of the Fourteenth Amendment, but courts borrow from Eighth Amendment case law

16  when analyzing the rights of pretrial detainees. *See Pierce v. County of Orange*, 526 F.3d

17  1190, 1205 (9th Cir. 2008); *Johnson v. Meltzer*, 134 F.3d 1393, 1398 (9th Cir. 1998) (Eighth

18  Amendment establishes minimum standard of care for pretrial detainees).

19      A prisoner can establish an Eighth Amendment violation arising from deficient medical

20  care if he can prove that prison officials were deliberately indifferent to a serious medical need.

21  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A finding of deliberate indifference involves the

22  examination of two elements: "the seriousness of the prisoner's medical need and the nature

23  of the defendant's responses to that need." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir.

24  1992), *rev'd on other grounds, WMX Tech., Inc. v. Miller*, 104 F.3d. 1133 (9th Cir. 1997).

25  "A 'serious' medical need exists if the failure to treat a prisoner's condition could result in

26  further significant injury or the 'unnecessary and wanton infliction of pain.'" *Id.* (citing *Estelle*,

27  429 U.S. at 104). Examples of conditions that are "serious" in nature include "an injury that

28

a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Id.* at 1059-60; *see also Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (quoting *McGuckin* and finding that inmate whose jaw was broken and mouth was wired shut for several months demonstrated a serious medical need).

If the medical needs are serious, Plaintiff must show that Defendants acted with deliberate indifference to those needs. *Estelle*, 429 U.S. at 104. "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). Deliberate indifference entails something more than medical malpractice or even gross negligence. *Id.* Inadvertence, by itself, is insufficient to establish a cause of action under § 1983. *McGuckin*, 974 F.2d at 1060. Instead, deliberate indifference is only present when a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002) (quoting *Farmer*, 511 U.S. at 858). "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment" or the express orders of a prisoner's prior physician for reasons unrelated to the medical needs of the prisoner. *Hunt v. Dental Dep't.*, 865 F.2d 198, 201 (9th Cir. 1989) (internal quotation marks and citation omitted). Where delay in receiving medical treatment is alleged, a prisoner must demonstrate that the delay led to further injury. *McGuckin*, 974 F.2d at 1060.

Here, Plaintiff appears to allege a delay in medical care when he states that it took three weeks to get X-rays of his toe. Plaintiff does not allege, however, that the delay in treatment led to any further injury. Accordingly, this claim should be dismissed with leave to amend. *See Franklin v. Murphy*, 745 F.2d 1221, 1228 n. 9 (9th Cir. 1984) ("[p]ro se plaintiffs proceeding [ in forma pauperis] must...be given an opportunity to amend their complaint [prior to dismissal] unless it is absolutely clear that the deficiencies of the complaint could not be cured

1    by amendment."). If Plaintiff chooses to amend, he must identify a particular individual

2    defendant that he alleges violated his constitutional rights along with the requisite supporting

3    factual allegations as outlined above.

4    **3. Count VIII**

5    In Count VIII, Plaintiff alleges that Officers Youngblood and Tingley performed an

6    illegal search of his cell, when they did not search anyone else's cell. (Doc. # 1-3 at 11.) He was

7    told he could not use an extra mattress in his cell without a medical order. (*Id*.) Plaintiff

8    mentions batteries being declared contraband. (*Id*.) He also asserts that he was told he could

9    not have a chair in his cell because his roommate had moved out. (*Id*.)

10   Plaintiff goes on to allege that later in the day he was handcuffed by the two officers and

11   taken to another cell. (*Id*.) He claims that in the process they injured his right shoulder, chest

12   and neck, and threatened him. (*Id*.)

13   This count potentially states two claims for relief: (1) an illegal search under the Fourth

14   and Fourteenth Amendments; and (2) an excessive force claim under the Fourth Amendment.

15   **i. Search**

16   *Bell v. Wolfish*, 441 U.S. 520 (1979) makes clear that pretrial detainees have no more

17   than a "diminished expectation of privacy." *Id.* at 557.

18   In *Hudson v. Palmer*, 468 U.S. 517 (1984), the Supreme Court held:

19   [S]ociety is not prepared to recognize as legitimate any subjective expectation
     of privacy that a prisoner might have in his prison cell and that, accordingly, the

20   Fourth Amendment proscription against unreasonable searches does not apply
     within the confines of the prison cell. The recognition of privacy rights for

21   prisoners in their individual cells simply cannot be reconciled with the concept
     of incarceration and the needs and objectives of penal institutions.

22   *Hudson*, 468 U.S. at 526-27. The Ninth Circuit has also recognized that inmates, including

23   pretrial detainees, ordinarily have no reasonable expectation that their cells will not be subject

24   to search by prison officials. *Mitchell v. Dupnik*, 75 F.3d 517, 522-23 (9th Cir. 1996).

25   Accordingly, this claim should be dismissed with prejudice.

26   **ii. Excessive force**

27

28

10

1    "[T]he Fourth Amendment sets the applicable constitutional limitations for considering

2    claims of excessive force during pretrial detention." *Lolli v. County of Orange*, 351 F.3d 410,

3    415 (9th Cir. 2003) (internal citation and quotation marks omitted). Therefore, when a

4    pretrial detainee brings an excessive force claim, it is analyzed under the Fourth Amendment's

5    "objective reasonableness" standard. *Id.* (citation omitted). "[T]he 'reasonableness' inquiry

6    in an excessive force case is an objective one: the question is whether the officers' actions are

7    'objectively reasonable' in light of the facts and circumstances confronting them, without

8    regard to their underlying intent or motivation." *Id.* (internal citation and quotation marks

9    omitted). "In considering an excessive force claim, we balance 'the nature and quality of the

10   intrusion on the individual's Fourth Amendment interests against the countervailing

11   governmental interests at stake." *Id.* (internal quotation marks and citation omitted).

12       Plaintiff states a colorable excessive force claim under the Fourth Amendment against

13   Officers Youngblood and Tingley.

## III. RECOMMENDATION

**IT IS HEREBY RECOMMENDED THAT**:

16       (1) Plaintiff's request to proceed in forma pauperis (Doc. # 1) be **GRANTED.** The Clerk

17   of the Court should be instructed to **FILE** the Complaint (Doc. # 1-1). The movant herein

18   should be permitted to maintain this action to conclusion without the necessity of prepayment

19   of fees or costs or the giving of security therefor. This order granting in forma pauperis status

20   should not extend to the issuance of subpoenas at government expense.

21       (2) Plaintiff's motion requesting a decision on his in forma pauperis application (Doc.

22   # 8) should be **DENIED AS MOOT.**

23       (3)The Clerk's Office is directed to add the following additional defendants to the

24   caption: Jim Leslie, Nicole Moschello, Washoe County Sheriff's Department, Officer Tingley,

25   and Officer Youngblood,.

26       (4) Counts I-IV, VI-VII, and IX-XI, and therefore, the following defendants: Washoe

27   County, Public Defender's Office, District Attorney's Office, Washoe County Detention Center,

Harold G. Albright, Jim Leslie, and Nicole Moschello; should be **DISMISSED WITH PREJUDICE**.

(5) Jim Leslie should be **DISMISSED WITH PREJUDICE** from Count V.

(6) The state law negligence claim in Count V should be **DISMISSED WITH LEAVE TO AMEND TO IDENTIFY THE PROPER DEFENDANT**.

(7) The claim for deliberate indifference to a serious medical need under the Eighth and Fourteenth Amendments in Count V should be **DISMISSED WITH LEAVE TO AMEND**.

(8) The Fourth and Fourteenth Amendment claim related to an alleged unreasonable search in Count VIII should be **DISMISSED WITH PREJUDICE**.

(9) Plaintiff should be allowed to **PROCEED** with his Fourth Amendment excessive force claim against Officers Tingley and Youngblood in Count VIII.

(10) Plaintiff is advised that pursuant to Local Rule 15-1, if he chooses to file an amended complaint, it shall be complete in itself without reference to any previous complaint. Plaintiff should be given thirty (30) days from the date of the order adopting the Report and Recommendation within which to file an amended complaint remedying, if possible, the defects in the Complaint explained above. Any allegations, parties, or requests for relief from prior papers that are not carried forward in the amended complaint will no longer be before the court. Plaintiff is cautioned that if he fails to file an amended complaint within the time period specified above, the action will proceed on the Complaint, and only with respect to those claims which the court allows to proceed. Plaintiff shall clearly title the amended complaint as such by placing the words "AMENDED COMPLAINT" on page 1 in the caption, and plaintiff shall place the case number, **3:11-CV-00754-LRH-WGC**, above the words "AMENDED COMPLAINT" in the space for "Case No."

DATED: April 17, 2012.

_____
WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE

12